STATE OF NEBRASKA EX REL. ERNEST W. CHAMBERS AND THE NEW
ALLIANCE PARTY, RELATORS, V. ALLEN J. BEERMANN, SECRETARY
OF STATE OF THE STATE OF NEBRASKA, RESPONDENT.

428 N.W.2d 883

Filed September 8, 1988.   No. AP-096.

Robert B. Creager, of Berry, Anderson, Creager & Wittstruck, P.C., for relators.

Robert M. Spire, Attorney General, for respondent.

HASTINGS, C.J.

This is a special proceeding relating to elections addressed to a judge of the Nebraska Supreme Court under the provisions of Neb. Rev. Stat. § 32-517 (Reissue 1984). It should be, emphasized at the outset that this proceeding is not before, nor is this an opinion by, the Supreme Court. In the same manner, this is not an action in mandamus or for injunctive relief. The author of this opinion has authority only under the provisions of the previously cited statute.

The facts are not in dispute. The relator Ernest W. Chambers is currently serving in the Nebraska State Legislature representing the 11th Legislative District of the State of Nebraska. He was nominated at the May 1988 primary as a candidate for reelection to that position, and was issued and had forwarded to him by the respondent, Secretary of State Allen J. Beermann, a certificate of nomination. As of August 22, 1988, he had not returned the certificate nor had he declined or withdrawn the nomination.

The relator the New Alliance Party apparently was formed at some time before the May 1988 primary election, but the candidate certified as having been nominated at that election as its candidate for the U.S. Senate declined to serve. On July 9, 1988, the New Alliance Party met and nominated the relator Chambers as the party's candidate for the U.S. Senate. On July 11, 1988, Chambers filed with the office of the Secretary of State an acceptance of that nomination, pledging himself "to

abide by the results of the general election and qualify, if elected
. . . ."

On July 22, 1988, the respondent Beermann, based on an opinion from the Nebraska Attorney General, issued an order that relator Chambers' name shall not appear on the ballot for the general election as the nominee of the New Alliance Party for the U.S. Senate. The reasons given in that order were that a person cannot run for two offices to be filled in the same general election (Neb. Rev. Stat. § 32-4,155 (Reissue 1984)) and that Chambers' nomination by the New Alliance Party was defective, because Chambers had not changed his registration to that party at least 90 days prior to filing his application for nomination (Neb. Rev. Stat. § 32-515 (Reissue 1984)). The relators then commenced these proceedings under the provisions of § 32-517.

Respondent initially raises the question of the applicability of § 32-517 to these proceedings. That section provides:

All certificates of nomination or nomination statements, which are in apparent conformity with the provisions of sections 32-512 to 32-516, shall be deemed to be valid, unless objections thereto shall be duly made in writing within ten days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby . . . . The officer with whom the original certificate was filed, or who made an affidavit to the original nominating statement shall, in the first instance, pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by the county court, by a judge of the district court, or by a Judge of the Supreme Court at chambers, on or before the fifty-fifth day preceding the election. Such order may be made summarily upon application of any party interested or political party committee as herein provided, and upon such notice as the court or judge may require. The decision of the Secretary of State, or the order of the county or district judge or Supreme Court Judge, shall be binding on all county, municipal or other officers with whom certificates of nomination are filed.

The respondent argues that although the entire Nebraska Supreme Court may have jurisdiction of this matter through mandamus, as provided for in Neb. Rev. Stat. § 24-204 (Reissue 1985) and Neb. Const. art. V, § 2, a single judge of this court is without jurisdiction in the present instance. His reason is that no objections were filed before the Secretary of State, and no hearing was held. Section 32-517 does speak in terms of "objections" and does provide for notice of such objections, but there is no clear requirement of a hearing. Such a reason seems to exalt form over substance. The respondent in effect raised his own objections and entered his order sustaining those objections. To say that jurisdiction would lie under this section if the Secretary of State would have sustained the objections of a third party and ordered the relator Chambers' name not to appear on the ballot, but that such jurisdiction is not available when that same officer enters the same order for the same reason on his own motion, does not make much sense. I, therefore, do assume jurisdiction of these proceedings in order to decide the remaining issues presented.

Respondent next questions relator Chambers' qualification to file as a candidate of the New Alliance Party under the political party registration provision of § 32-515. The previous section, Neb. Rev. Stat. § 32-514 (Reissue 1984), provides in substance that for a primary election, the candidate must file a statement that he affiliates with the party certifying him or her as its candidate. Section 32-515 reads in part: "*Provided*, that a change of registration to the political party named in the application less than ninety days prior to filing his application for nomination for any political office shall be deemed to be a lack of compliance with this section."

There seems to be no question that relator Chambers did not fulfill the 90-day requirement if, in fact, it did apply to him; i.e., he changed his party affiliation on June 15, 1988, and filed his acceptance of the nomination of the New Alliance Party on July 11, 1988.

However, Chambers was nominated by the New Alliance Party as its candidate by the party itself under Neb. Rev. Stat. § 32-522 (Reissue 1984). That section explains how such nomination shall be made, and concludes in subsection (3) with

the language: "The certificate, made . . . under the provisions of subsection (1) or (2) of this section, shall, upon being filed at least sixty days before the election, have the same force and effect as the original certificate of nomination or the nomination statement provided for in section 32-514." No reference is made to § 32-515, but respondent reads the requirement of that section into § 32-514. Without passing on that assumption, it is only necessary to look to Neb. Rev. Stat. § 32-526 (Cum. Supp. 1986), referring specifically to newly formed political parties. Subsection (7) of that particular provision states that "*[n]otwithstanding the provisions of section 32-515*, candidates for political office may register as members of the new political party and file for office as candidates under the party label of the new political party in accordance with the filing deadlines as established by law." (Emphasis supplied.) Chambers has otherwise fully complied "with the filing deadlines as established by law."

As his other objection to Chambers' filing, the respondent contends that § 32-4,155 prohibits a candidate for public office from filing for more than one such office. That section provides in part that "[n]o individual shall be eligible to file for two or more elected public offices to be filled at the same election, except for the position of delegate to a national or county convention." Apparently, because this section is found within article 4 of chapter 32 of the statutes, entitled "Provisions Applicable to Elections Generally," the respondent insists that it is applicable in this instance. Without explaining their position or otherwise supporting their statement, relators contend that this section applies only to a primary election. I do not agree with the relators.

Neb. Rev. Stat. § 32-425 (Reissue 1984), as amended by 1981 Neb. Laws, L.B. 446, provides in part:

The name of a candidate shall not appear on the ballot or any series of ballots at any ~~one~~ primary election more than once except for the office of delegate to a national or county convention, and no person shall be eligible to serve in more than one elected office ~~concurrently~~ defined in section 32-421.01.

Section 32-425 as so amended clearly would seem to apply to

primary elections only. However, also in L.B. 446, § 18, § 32-4,155 was enacted as previously set out above, making no reference to primary elections. This leaves no doubt in my mind but that § 32-4,155 applies to all elections.

That then brings us to the relators' contention that if the statute does in fact prohibit Chambers from running for the U.S. Senate while at the same election he seeks the office of state legislator, it is in fact invalid as being contrary to both the Nebraska Constitution and the U.S. Constitution.

The relators point out that U.S. Const. art. I, § 3, provides for the qualifications of a Senator as follows: "No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen." Relators contend that if § 32-4,155 prohibits a person who has already filed for another office from becoming a candidate for the U.S. Senate at the same election, that section requires an additional qualification for the office of U.S. Senator, contrary to the provisions of the U.S. Constitution. In support of that position, relators cite the case of *Powell v. McCormack*, 395 U.S. 486, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969), which held that Congress, in judging the qualifications of its members, is limited to the standing qualifications prescribed in the U.S. Constitution (art. I, §§ 2 and 3).

Relators also cite, in further support of their position, the cases of *In re Opinion of the Judges*, 79 S.D. 585, 116 N.W.2d 233 (1962), and *State ex rel. Wettengel v. Zimmerman*, 249 Wis. 237, 24 N.W.2d 504 (1946). *In re Opinion of the Judges* involved a question as to whether the governor or lieutenant governor of the State of South Dakota was eligible to receive and accept an interim appointment to the U.S. Senate. At that time, the constitution of the state, in addition to providing age and residency requirements for the office of governor and lieutenant governor, also made such officer ineligible to any other office during the term for which such officer had been elected. Based on U.S. Const. art. I, § 3, the South Dakota court stated at 586, 116 N.W.2d at 233: "We think it beyond reasonable dispute that the last phrase of this section is a

qualification which the State of South Dakota is without power to add for the office of United States Senator."

*State ex rel. Wettengel v. Zimmerman* involved a provision of the Wisconsin constitution which provided in part that judges should hold no office of public trust except a judicial office, and during the term for which they were elected, all votes for any other office given them by the Legislature or the people shall be void.

Joseph R. McCarthy was a duly elected, sworn, and serving judge of the State of Wisconsin, and, during that term, he filed for and was nominated for the office of U.S. Senator. The Wisconsin court, also basing its decision on U.S. Const. art. I, § 3, held that the provision of its own constitution was therefore invalid. The court stated: "Neither by constitutional provision nor legislative enactment can the state of Wisconsin prescribe qualifications of a candidate for nomination for the office of United States senator in addition to those prescribed by the constitution of the United States." 249 Wis. at 247, 24 N.W.2d at 508-09.

In *Storer v. Brown*, 415 U.S. 724, 94 S. Ct. 1274, 39 L. Ed. 2d 714 (1974), cited by respondent, the Supreme Court dealt with a provision of the California Elections Code which denied an independent candidate for elective office a position on the ballot if he or she had a registered affiliation with a qualified political party at any time within 1 year prior to the immediately preceding primary election. The unsuccessful candidate had challenged the provisions of the California law as adding qualifications for the office of U.S. Congress, contrary to U.S. Const. art. I, § 2.

The *Storer* Court recognized that "[m]oreover, as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." 415 U.S. at 730. The Court went on to state: "The requirement that the independent candidate not have been affiliated with a political party for a year before the primary is expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot. It involves no discrimination against independents." 415 U.S. at 733. Although not speaking directly

to the problem of "added qualifications" for office, the Court had no problem stating that the section of the code was not unconstitutional as alleged.

*Joyner v. Mofford*, 706 F.2d 1523 (9th Cir. 1983), suggested that state law which bars a state officeholder from running for federal office imposes an additional qualification on candidates and therefore violates the qualifications clause of the U.S. Constitution.

*State v. Senner*, 92 Ariz. 243, 375 P.2d 728 (1962), involved a statutory provision which prohibited an incumbent of an elective office from being eligible for nomination or election to any office other than the office so held. The state, in a quo warranto proceeding, sought to have the respondent's office of state corporation commissioner declared vacant because the commissioner had filed for the office of U.S. Representative. The Arizona court, although recognizing that the legislature had no authority to add qualification requirements for federal office, solved its dilemma by holding that the particular statutory provision established qualifications affecting state officers alone and did not reach out to qualify candidacy for the U.S. Congress.

In the final analysis, it appears that the Oklahoma court has come up with the most logical answer to a very similar question. In *Riley v. Cordell*, 200 Okla. 390, 194 P.2d 857 (1948), petitioner, a justice of the Supreme Court of Oklahoma, sought a writ of mandamus to compel the defendants, officers and members of the State Election Board, to place his name on the primary ballot as a candidate for the Democratic nomination for U.S. Senator. A section of the Oklahoma statutes provided that no justice of the supreme court shall become, during the term for which elected, a candidate for any office other than a judicial position. It was petitioner's contention that the statutory provision added a qualification for U.S. Senator in violation of U.S. Const. art. I, § 3. The Attorney General, as attorney for the defendants, conceded that point, and as stated by the court, "and we think properly so." 200 Okla. at 392, 194 P.2d at 859.

Petitioner argued that there was no constitutional or statutory provision expressly prohibiting him from seeking two

offices, contrary, of course, to the situation facing the relator Chambers. However, the Oklahoma court pointed to a provision of the Oklahoma statutes which required a candidate to file a notification and declaration on a form which prescribed that the candidate would accept such nomination and would "qualify for said office." That language, of course, is similar to that contained in § 32-514 and in the candidate filing form for the Legislature and the acceptance of nomination for U.S. Senator filed by the relator Chambers. The candidate filing form contains the words "I pledge myself to abide by the results of the election and *qualify if elected*" (emphasis supplied), and in the acceptance of nomination of the New Alliance Party is the language "I pledge myself to abide by the results of the general election and *qualify, if elected* . . . ." (Emphasis supplied.)

In *Riley*, the defendants argued that the necessary inference to be drawn from the statutory provisions relating to qualifying for the office is that an elector may not become a candidate for more than one office at the same election. The court went on to state:

> We agree with this contention. Where the meaning of a statute is doubtful it should be given a construction that is reasonable, sensible, and in keeping with the public policy of the state. [Citation omitted.] It is the public policy of this state that these and many other public offices shall be filled by the people under the election laws, and that some of them may be filled by appointment only when an unexpected vacancy occurs. In keeping with this expressed public policy, the voters have a right to expect one seeking their suffrage to qualify and fill the office he seeks. The construction urged by the Attorney General, that no person should be permitted at the same primary election to be a candidate for nomination for two or more offices when he may fill but one, is reasonable, sensible, and in keeping with the public policy of this state.

200 Okla. at 392, 194 P.2d at 860.

The Oklahoma court then pointed out a section of the statute which provided for the withdrawal of a candidate upon the filing of a " 'withdrawal properly verified before a notary

public.' " 200 Okla. at 393, 194 P.2d at 860. Examining the sworn notification and declaration filed by the petitioner whereby he indicated his willingness to accept the nomination and qualify for office, the court stated at 393, 194 P.2d at 860:

It is difficult to comprehend how petitioner could more forcibly or clearly have stated his intentions on April 30, 1948, than was done in the notification and declaration then filed. The only interpretation of that instrument consistent with good faith is that petitioner then intended to and did withdraw from the race for Associate Justice of the Supreme Court. To interpret this instrument otherwise would be to attribute bad faith to petitioner which this court will not do. The withdrawal need not be couched in any particular language. It is sufficient that it be properly sworn to, timely made and show the intention of the candidate to withdraw. In the supplemental or amended petition, petitioner alleged that at the time of filing for the office of United States Senator he orally informed the Secretary of the Election Board that he did not waive his filing for the office of Associate Justice of the Supreme Court. Even if made, it is wholly inconsistent with the terms and conditions of the notification and declaration on which petitioner bases his application for the writ sought, and petitioner will not be heard to urge it.

The reasoning of the Oklahoma court is persuasive and is adopted for the purpose of this decision. A person who files for a second public office at the same election contrary to either § 32-425 or § 32-4,155, by the filing of an acceptance of nomination or a candidate filing form whereby such candidate states under oath that he or she will "qualify if elected," has by inference withdrawn the first filing.

Because the conclusion reached does not prohibit the relator Chambers from seeking the office of U.S. Senator, it is unnecessary to reach the question of the validity of § 32-4,155 under the federal Constitution.

Relators' claims under Neb. Const. art. III, §§ 8 and 9, are without merit. If anything, § 9, which states in substance that no person holding office under the authority of the United States shall be eligible to have a seat in the Legislature, supports

the conclusion reached herein.

I conclude that (1) the relator Chambers is qualified to become a candidate for the U.S. Senate at the November 8, 1988, general election; (2) that he cannot be a candidate for both that office and the office of a legislator of the Nebraska Legislature at the same election; (3) that unless he declines his nomination for the U.S. Senate by September 14, 1988, relator Chambers, by filing and allowing to stand his acceptance of nomination for U.S. Senator, will have caused the cancellation and withdrawal of his earlier nomination for the Nebraska Legislature; and (4) that, absent a withdrawal of such candidacy for the U.S. Senate, the respondent is directed to place the relator Chambers' name on the ballot of the November 8, 1988, general election as the candidate of the New Alliance Party for U.S. Senator.

JUDGMENT ENTERED.