Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/15/2018 09:15 AM CDT

Tyler A. Davis, relator, v. John A. Gale, in his
official capacity as Secretary of State
of the State of Nebraska, respondent,
and Robert J. Krist, intervenor.
___ N.W.2d ___

Filed March 19, 2018.    No. S-18-218.

Special proceeding before Michael G. Heavican, Chief
Justice of the Nebraska Supreme Court. Judgment entered.

Joseph A. Wilkins, of Mattson Ricketts Law Firm, for relator.

Douglas J. Peterson, Attorney General, L. Jay Bartel, Ryan
S. Post, and Lynn A. Melson for respondent.

David A. Domina, of Domina Law Group, P.C., L.L.O., for
intervenor.

Heavican, C.J.

Tyler A. Davis objected to the inclusion of Robert J. Krist
as a Democratic candidate for Nebraska governor on the pri-
mary election ballot. Nebraska Secretary of State John A.
Gale denied the objection. Davis filed a verified petition for
special proceeding before a judge of the Nebraska Supreme
Court pursuant to Neb. Rev. Stat. § 32-624 (Reissue 2016).
The issue is whether non-partisan is a "political party affilia-
tion" for the purpose of interpreting Neb. Rev. Stat. § 32-612
(Reissue 2016). I conclude non-partisan is not a "political party
affiliation," but rather is the lack of a political party affiliation.
Krist's name shall be included on the primary ballot.

## FACTS

The relevant facts are undisputed. Prior to September 13, 2017, Krist was affiliated with the Republican party. On that date, he filed a Nebraska voter registration application with the Douglas County election commissioner, registering as "Nonpartisan." On February 12, 2018, Krist filed a Nebraska voter registration application with the Douglas County election commissioner, registering as a Democrat.

On February 13, Krist filed with the Nebraska Secretary of State a "Governor Candidate Filing Form," declaring he was a Democratic candidate for the office of Nebraska governor, and requesting that his name be shown on the ballot as "Bob Krist" for the primary election to be held on May 15, 2018.

On February 20, 2018, Davis filed an objection with the Secretary of State to Krist's candidate filing form.[1] Davis alleged that Krist's February 13, 2018, candidate filing form was not effective because Krist made a "change of political party affiliation" after the first Friday in December prior to the date of the May 15, 2018, primary, and thus violated § 32-612. The first Friday in December prior to the date of the May 15, 2018, primary election was December 1, 2017.

Gale denied the objection on February 27, 2018. Gale determined that on December 1, 2017, Krist was a nonpartisan registered voter with no political party affiliation. Gale reasoned that because Krist was registered as nonpartisan prior to February 12, 2018, his Nebraska voter registration application filed that day declaring his "Party Affiliation" as a Democrat was a *declaration* of a political party affiliation, not a *change* of political party affiliation.

## JURISDICTION

On March 6, 2018, Davis filed an application for "leave to commence an original action in the nature of a petition for

[1] See § 32-624.

a special proceeding relating to elections." The application referred to § 32-624 and to the Nebraska Supreme Court's original jurisdiction under Neb. Const. art. V, § 2 as set forth in Neb. Rev. Stat. § 24-204 (Reissue 2016).

In his responsive brief, Krist contends original jurisdiction does not lie for this action because it does not involve an election contest in that no election has occurred. Whether the court has original jurisdiction need not be determined because § 32-624 provides jurisdiction for this special proceeding. Pursuant to that statute, Gale's decision shall be final

> unless an order is made in the matter by a judge of the county court, district court, Court of Appeals, or Supreme Court on or before the fifty-fifth day preceding the election. Such order may be made summarily upon application of any political party committee or other interested party and upon such notice as the court or judge may require. The decision of the Secretary of State or the order of the judge shall be binding on all filing officers.

Davis' filing invoked § 32-624, and thus a judge of this court may issue an order summarily. The decision here is not an opinion of the Nebraska Supreme Court.[2] Rather, it is a decision of a single justice of the Nebraska Supreme Court.

## ANALYSIS

At issue in this special proceeding is the application and interpretation of Neb. Rev. Stat. §§ 32-610 (Supp. 2017) and 32-612. Section 32-610 provides in relevant part:

> [N]o person shall be allowed to file a candidate filing form as a partisan candidate or to have his or her name placed upon a primary election ballot of a political party unless (1) he or she is a registered voter of the political party if required pursuant to [a party rule] . . . .

---

[2] See, *State ex rel. Chambers v. Beermann*, 229 Neb. 696, 428 N.W.2d 883 (1988); *State ex rel. Strom v. Marsh*, 162 Neb. 593, 77 N.W.2d 163 (1956).

And § 32-612(1) provides in relevant part:

> A change of political party affiliation by a registered voter so as to affiliate with the political party named in the candidate filing form . . . after the first Friday in December prior to the statewide primary election shall not be effective to meet the requirements of section 32-610 . . . , except that any person may change his or her political party affiliation after the first Friday in December prior to the statewide primary election to become a candidate of a new political party which has successfully completed the petition process required by section 32-716.

The first Friday in December prior to the May 15, 2018, statewide primary election was December 1, 2017. On that date, Krist was a registered voter and his registration reflected he was "Nonpartisan."

The heart of the issue is the meaning of the statutory phrase "a change of political party affiliation" as used in § 32-612. Gale, relying in part on a 1998 memorandum issued by a former Secretary of State,[3] reasoned that a voter registered as "Nonpartisan" is not affiliated with any party so that when Krist registered in February 2018 as a Democrat, he was at that time merely declaring an affiliation with a political party, not effecting a change of political party affiliation.

## STANDARD OF REVIEW AND PROPOSITIONS OF LAW

The issue is one of statutory interpretation, which presents a question of law.[4] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which

---

[3] See Neb. Rev. Stat. § 32-201 (Reissue 2016) (providing Secretary of State decisions on election law have force of law until changed by courts).

[4] *Twin Towers Condo Assn. v. Bel Fury Invest. Group*, 290 Neb. 329, 860 N.W.2d 147 (2015).

are plain, direct, and unambiguous.[5] In discerning the meaning of a statute, a court determines and gives effect to the purpose and intent of the Legislature as ascertained from the entire language considered in its plain, ordinary, and popular sense.[6]

A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[7] The whole and every part of the statute must be considered in fixing the meaning of any of its parts.[8] In construing a statute, a court looks to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served. A court must then reasonably or liberally construe the statute to achieve the statute's purpose, rather than construing it in a manner that defeats the statutory purpose.[9]

Over one hundred years ago, we stated that "it is the duty of the courts, in construing statutes providing for printing the names of candidates of both old and new political organizations upon the ballot," to do so in light of the constitutional principle that "all elections shall be free; and there shall be no hindrance or impediment to the right of the qualified voter to exercise the elective franchise."[10] Other jurisdictions have similarly concluded that statutes relating to election law must be liberally construed. In Louisiana, laws governing the conduct of elections are liberally interpreted "so as to promote

---

[5] *Farmers Co-op v. State*, 296 Neb. 347, 893 N.W.2d 728 (2017).

[6] *Id.*

[7] *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015); *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

[8] *Board of Trustees v. City of Omaha*, 289 Neb. 993, 858 N.W.2d 186 (2015); *Fisher v. PayFlex Systems USA*, 285 Neb. 808, 829 N.W.2d 703 (2013).

[9] *Fisher v. PayFlex Systems USA, supra* note 8.

[10] *Morrissey v. Wait*, 92 Neb. 271, 138 N.W. 186, 188 (1912); Neb. Const. art. I, § 22.

rather than defeat candidacy," and the person objecting to the candidacy bears the burden of proving the candidate is disqualified.[11] New Jersey liberally construes election laws so as to "effectuate their purpose," being mindful that statutes designed to establish an orderly system and procedure in the electoral process should not be "so narrowly construed as to prevent, obstruct, discourage or otherwise frustrate" the right of persons constitutionally qualified for public office from offering themselves as candidates.[12] Ohio liberally construes election laws "in favor of candidates for public office."[13] And Pennsylvania liberally construes its election laws "so as not to deprive a candidate of the right to run for office or the voters of their right to elect a candidate of their choice."[14] I agree with the reasoning of these authorities and conclude §§ 32-610 and § 32-612 should be liberally construed so as to promote, rather than defeat, candidacy for the primary election.

### STATUTORY LANGUAGE

Davis argues that Gale erred by interpreting § 32-612 in isolation rather than in conjunction with § 32-610. He contends that read together, § 32-610 "required . . . Krist to be a registered voter of the Democratic party if he wished to be included in the 2018 primary election and § 32-612 required him to do it before December 1, 2017."[15] Davis asserts this is so because Krist had to "change" his voter registration in order to become affiliated with the Democratic party, and he failed to do so prior to the deadline imposed by § 32-612.

I reject this argument because it conflates the concept of voter registration contained in § 32-610 with the separate

---

[11] *Russell v. Goldsby*, 780 So. 2d 1048, 1051 (La. 2000).

[12] *Alston v. Mays*, 152 N.J. Super. 509, 517 (1977).

[13] *State ex rel. Livingston v. Miami Cty. Bd. of Elections*, 963 N.E.2d 187, 192 (Ohio App. 2011).

[14] *Petition of Cioppa*, 626 A.2d 146, 148 (Pa. 1993).

[15] Brief for relator at 8.

concept of party affiliation in § 32-612. As the instant case aptly demonstrates, one can be registered to vote without having a party affiliation. The objectives of §§ 32-610 and 32-612 differ and they use different terminology. As such, it is incorrect to read them in the manner urged by Davis.

The record is clear that Krist was a registered voter of the Democratic party before he filed his candidate form. Krist therefore met the statutory requirement of § 32-610 and his filing was effective unless, under § 32-612, he made a "[c]hange of political party affiliation" after December 1, 2017.

Section 32-612 does not define "political party affiliation" or what constitutes a change thereof. The dictionary definition of "change" is "[t]o substitute one thing for (another); to replace (something) with something else, esp. something which is newer or better; to give up (something) in order to replace it with something else."[16] A different and related statute offers guidance on the definition of "political party affiliation." Neb. Rev. Stat. § 32-312 (Supp. 2017) sets forth what must be contained in a Nebraska voter registration application. As to "Party Affiliation," § 32-312 requires the application to

> show the party affiliation of the applicant as Democrat, Republican, or Other . . . . . . or show *no party affiliation as Nonpartisan*. (Note: If you wish to vote in both partisan and nonpartisan primary elections for state and local offices, you must indicate a political party affiliation on the registration application. If you *register without a political party affiliation (nonpartisan)*, you will receive only the nonpartisan ballots for state and local offices at primary elections. If you register without a political party affiliation, you may vote in partisan primary elections for congressional offices).[17]

---

[16] "Change," Oxford English Dictionary Online, http://www.oed.com/view/Entry/30468 (last visited March 15, 2018).

[17] § 32-312 (Emphasis added.)

Similarly, Neb. Rev. Stat. §§ 32-308 and 32-312.02(5) (Reissue 2016) require that a voter registration application include the "party affiliation of the applicant or indication that the applicant is not affiliated with any political party." Thus, a voter registered as non-partisan is an individual not affiliated with a political party.

Sections 32-308, 32-312, 32-312.02, 32-610, and 32-612 are all part of the Election Act.[18] A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme.[19] The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible.[20]

It is apparent from the foregoing that the phrase "political party affiliation" is a term of art used by the Legislature to specifically reference an existing relationship with one of the established Nebraska political parties: Republican, Democrat, or Libertarian.[21] And terms of art with legal significance used in statutes are to be construed and understood according to their appropriate meaning.[22] One who is registered as "Nonpartisan," as Krist was prior to February 12, 2018, has no relationship with any of these three established political parties and thus has no "political party affiliation" as that phrase is used by the Nebraska Legislature in the Election Act.

One who has no "political party affiliation" cannot change his or her "political party affiliation." This is so because, as noted above, change requires substitution of one thing for

---

[18] See Neb. Rev. Stat. § 32-101 (Reissue 2006).

[19] *Japp v. Papio-Missouri River NRD*, 271 Neb. 968, 716 N.W.2d 707 (2006).

[20] *Id.*

[21] See § 32-312.

[22] See Neb. Rev. Stat. § 49-802(5) (Reissue 2010).

another or replacement of one thing with something else.[23] One cannot "substitute" one thing for another or "replace" a thing with something else if one has no thing to begin with. For example, when one first registers to vote, he or she may choose to affiliate with a political party. But in doing so, he or she does not undertake a "change of political party affiliation," because there was no affiliation to substitute or replace. The same logic applies when a voter who is registered as a nonpartisan, and therefore has "no political party affiliation,"[24] seeks to become affiliated with a political party. There is no "change of political party affiliation." Rather, there is simply a declaration of a political party affiliation. A change from no political party affiliation to a political party affiliation is not a "change of political party affiliation" for purposes of § 32-612.

In his order denying Davis' objection to Krist's filing form, Secretary of State Gale noted that former Secretary of State Scott Moore issued a written memorandum in February 1998, interpreting § 32-612. In that memorandum, Secretary of State Moore concluded: "It is my position that someone who amends their registration from nonpartisan to affiliate with a political party has not affected 'a change in political party affiliation . . .' but has instead chosen to declare an affiliation." Secretary of State Moore thus found that one registered as a nonpartisan could affiliate with a political party after the December deadline and run for partisan office in the primary election.

The Legislature has provided by statute that the Secretary of State shall decide disputed points of election law, and that such "decisions shall have the force of law until changed by the courts."[25] In light of this legislative provision, I presume the Legislature was aware of former Secretary of State Moore's 1998 interpretation of § 32-612. Despite such knowledge, the

---

[23] "Change," Oxford English Dictionary Online, http://www.oed.com/view/Entry/30468 (last visited March 15, 2018).

[24] See § 32-312.

[25] § 32-201.

Legislature made no attempt to amend the "change of political party affiliation" language as interpreted by the Secretary of State; thus, an acquiescence with the interpretation thereof is indicated.[26]

Because the phrase "change of political party affiliation" as used in § 32-612 necessitates the existence of a political party with which to be affiliated, Krist did not violate § 32-612 when he registered as a Democrat in February 2018. To the contrary, Krist merely declared an affiliation. Neither § 32-610 nor § 32-612 render Krist's candidate form ineffective. Gale correctly denied Davis' objection thereto.

### Purpose and History of § 32-612

This interpretation of the plain language "a change in political party affiliation" is consistent with the purpose and history of § 32-612. As encompassed in that statute, the time limitations imposed on candidates seeking to join a political party prior to the primary election originated in 1925, and were codified by the Legislature first at Neb. Rev. Stat. § 32-1124 and later at Neb. Rev. Stat. § 32-515. The language used with respect to those limitations has varied substantially over time. At times the language was dependent upon a candidate's registration, and at times the language was dependent upon a candidate's affiliation with a political party. I find these variations significant in that they demonstrate the Legislature was capable of using precise language to draft the limitation it wished to impose.

When originally enacted, the statute required a nominee to file, at least 25 days before the primary, a statement verifying under oath that he or she "affiliates" with the political party nominating him or her.[27] The direct precursor to the current

---

[26] See, generally, *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012) (holding when appellate court judicially construes statute and construction does not evoke amendment, it is presumed Legislature acquiesced in court's determination of Legislature's intent).

[27] Laws 1925, c. 108, § 1, p. 297.

language appears to have been a 1939 amendment which pro-
vided that

> [a]ny elector of one political party within the mean-
> ing of this article who desires to affiliate with a different
> political party for the purpose of becoming a candidate
> of said different political party shall, at least ninety days
> prior to filing his application for nomination or accept-
> ance of a nomination by petition, publicly declare his
> intention to change his party affiliation by filing a written
> statement thereof duly signed and sworn . . . .[28]

In 1953, a provision was added after the above language,
stating:

> *Provided*, that where the elector resides in an area requir-
> ing registration as a prerequisite to voting that a change
> of registration prior to the most recent election and at
> least ninety days prior to filing his application for nomi-
> nation for any political office shall be deemed to be a
> substantial compliance herewith.[29]

In 1969, the language added in 1939 was removed and
§ 32-515 stated only that "a change of registration at least
ninety days prior to filing his application for nomination for
any political office shall be deemed to be a substantial compli-
ance herewith."[30] Finally, in 1975 this language was changed
again to provide "a change of registration to the political party
named in the application less than ninety days prior to filing
his application for nomination for any political office shall
be deemed to be a lack of compliance with this section."[31]
That language remained in § 32-515 until the election statutes
were re-codified in 1994 and the current language of § 32-612
was adopted.

---

[28] Laws 1939, c. 34, § 9, p. 180.

[29] Laws 1953, c. 106, § 23, p. 332.

[30] Laws 1969, c. 259, § 41, p. 980.

[31] Laws 1975, L.B. 494, § 2.

The legislative history does not indicate why the language used in § 32-612 differs from that used as of the 1975 amendments in § 32-515. It is apparent, however, that the language is significantly different. As noted, § 32-515 prohibited "a change of registration to the political party named in the application" within a certain number of days prior to the primary election. If that were the relevant statutory language today, Davis' argument would be more compelling. Notably, however, the language specifically chosen by the Legislature in § 32-612 and applicable in this case does not broadly prohibit a candidate from changing his or her registration to the political party named in the application. Instead, it prohibits only a "change of political party affiliation" after the first Friday in December of the preceding year. As noted, "political party affiliation" is a term of art used by the Legislature in election-related statutes and is consistently applied by that body only as to affiliation with one of the existing political parties—not to a nonpartisan voter.[32] In fact, a "Nonpartisan" or "Independent" political party cannot exist under Nebraska law.[33]

To the extent it is useful, I note that additional authorities support this interpretation of the Legislature's chosen language. The U.S. Supreme Court has recognized, in a related context, that an "independent candidate" has no "political party affiliations."[34] Similarly, the Nebraska Supreme Court has recognized that one must be "affiliated" with a party in order to vote in a primary election, and that affiliation means "open declaration of allegiance to a party."[35] Further, a Nebraska Attorney General's opinion addressed a related issue in 1998. The opinion addressed the application of § 32-612 to "a person

---

[32] See §§ 32-212 and 32-212.02.

[33] Neb. Rev. Stat. § 32-716 (Reissue 2016).

[34] *Storer v. Brown*, 415 U.S. 724, 733, 84 S. Ct. 1274, 39 L. Ed. 2d 714 (1974).

[35] *State v. Drexel*, 74 Neb. 775, 105 N.W. 174 (1905).

who was registered in one county as a member of a particular party," and then registered "as a member of a different party in a different county."[36] That opinion concluded § 32-612 applied, noting in part that "party affiliation" and "voter registration" are not synonymous.

The sum of these parts is that the phrase "political party affiliation," and the concept of affiliating with a political party, has been recognized in a distinct context by the legislative, executive, and judicial branches of Nebraska government. That context is in relation to an existing political party and an allegiance thereto. As such, the Legislature's use of the precise phrase "change of political party affiliation" in § 32-612 must be viewed in light of this distinct context, and particularly because under the relevant jurisprudence I am to liberally construe the statute to promote rather than defeat candidacy, limited to its precise terms. This is especially so because earlier codifications of the statute used substantially different language, which indicates the Legislature knew how to define the limitation to precise terms and intended to do so.

In light of the precise language used in § 32-612, I conclude that only a "change of political party affiliation" so as to "affiliate" with the political party named in the candidate filing form is prevented after the first Friday in December of the preceding calendar year. Because in February 2018 Krist was unaffiliated with a political party as that term of art has repeatedly been used in Nebraska law, he made no change to his political party affiliation in order to become affiliated with the Democratic party; thus Gale correctly denied the objection to Krist's candidate filing form.

### Other Arguments Lack Merit

I briefly dispose of Davis' other arguments. First, Davis argues in his brief that Gale's interpretation of § 32-612 violates

---

[36] Att'y Gen. Op. No. 98024 (Apr. 9, 1998).

the Equal Protection Clause of the Nebraska Constitution.[37] Davis contends that Gale's interpretation draws "an arbitrary distinction between two classes of people (affiliated and unaffiliated) and enforces the law differently depending upon which class of people the applicant falls into."[38] Such an argument is not properly presented in this limited special proceeding and I therefore decline to address it.

Second, Davis' original objection to Krist's candidate form was based in part on Krist's action related to a proposed "United Nebraska" political party. The record is clear, however, that no such political party exists and that the only official partisan political parties recognized in Nebraska are the Republican, Democrat, and Libertarian parties. Because the record shows "United Nebraska" is not and never has been a recognized political party in Nebraska, any argument that Krist "changed [his] political party affiliation" from "United Nebraska" to "Democrat" in February 2018 is without merit.

## CONCLUSION

The "change of political party affiliation" language in § 32-612 effectively allows a candidate registered without a political party affiliation to "game" the primary system, in that he or she may wait as late as March 1[39] before affiliating with a party and filing a candidate form. In contrast, a candidate affiliated with a political party may file a candidate form with a different political party only if he or she has registered with that different political party prior to the first Friday in December preceding the primary election. A non-affiliated candidate can

---

[37] Neb. Const. art. I, § 3. Davis does not assert a violation of equal protection under the U.S. Constitution.

[38] Brief for relator at 13.

[39] See Neb. Rev. Stat. § 32-606 (Reissue 2016) (an incumbent of any elective office shall file between December 1 and February 15 prior to the date of the primary election, all other candidates shall file between December 1 and March 1 prior to the date of the primary election).

thus adopt a "wait and see" approach and weigh the relative strengths and weaknesses of the candidates for both political parties prior to choosing a party affiliation. Whether this loophole in the statute was contemplated by the Legislature when enacting § 32-612, it had every opportunity to draft the language precisely and specifically and it chose the language at issue even after utilizing substantially different language in prior versions of the statute. Furthermore, for approximately 20 years the Nebraska Secretary of State's office has interpreted the language in § 32-612 to not apply to one registered as nonpartisan, and the Legislature has taken no action to change the language. I can do no more than interpret the language in the statute.

For the foregoing reasons, I conclude that Gale properly denied Davis' objection. Krist's name should be placed on the May 15, 2018, primary ballot as a Democratic candidate for governor.

JUDGMENT ENTERED.