W. F. PORTER ET AL. V. TAYLOR FLICK ET AL.

FILED NOVEMBER 21, 1900.   No. 11,662.

1. **Judge at Chambers**: CIVIL ACTION: FINAL JUDGMENT: REVIEW. The determination of a civil matter by a judge at chambers is not final; it may be reviewed by an appellate court in the proper proceeding.

2. **Court**: DEFINITION. The word "court," as used in section 582 of the Code of Civil Procedure, means not only the tribunal over which a judge presides, but also the judge himself when exercising, at chambers, judicial power conferred by statute.

3. **Australian Ballot Law**: JUDICIAL AUTHORITY: REVIEW. The authority given by the Australian ballot law (Compiled Statutes, 1899, ch. 26, sec. 137) to the county court and to the judges of

the district and supreme courts is, in its nature, judicial; and the orders made by such court or judge may be reviewed by error proceeding.

4. **Judicial Cognizance:** POLITICAL HISTORY. Courts will take judicial cognizance of the political history of the state.

5. **Legislative Purpose.** The legislative purpose in forbidding the adoption and use of an old party name by a new political organization (Compiled Statutes, 1899, ch. 26, sec. 131) was to avoid confusion in voting and to prevent fraud at elections; to enable the elector to express, with certainty, his real choice of candidates, and to eliminate, as far as possible, from the ballot, whatever might tend to deceive him into casting a vote contrary to his intention and for persons to whom he is opposed.

6. **Australian Ballot Law:** NEW PARTY: OLD NAME. Section 131 of the Australian ballot law (Compiled Statutes, 1899, ch. 26) forbids a new political organization from using an old party name, although such name is the one by which it is generally and popularly known, and not the name which the officers of its convention have certified to the secretary of state for use upon the official ballot.

7. **People's Independent Party:** POPULIST: SYNONYMS: NEW PARTY. The People's Independent party having been generally and popularly known in this state as the "Populist Party," that name can not be adopted and used by a new political organization.

ERROR to the district court for Lancaster county. Tried below before HOLMES, J. *Reversed.*

*T. J. Doyle, A. S. Tibbets* and *M. F. Harrington,* for plaintiffs in error.

*Blair & Richardson, contra.*

SULLIVAN, J.

This proceeding in error brings here for review an order made at chambers by Hon. E. P. Holmes, one of the judges of the district court for the third judicial district, reversing a decision of the secretary of state touching the right of a new political organization to use the party name which it had adopted. Defendants in error contend that this court has no appellate jurisdiction in

this class of cases, and that this proceeding must, for that reason, be dismissed. The argument is (1) that the legislature has made no provision for reviewing decisions made at chambers by judges of the district court; and (2) that the intention of the law is that orders like the one here in question shall not be subject to revision. If the decision of Judge Holmes was a judicial decision, there can be no doubt about the authority of this court to review it. The constitution provides (sec. 23, art. 6.): "The several judges of the courts of record shall have such jurisdiction at chambers as may be provided by law." And section 24 of the bill of rights declares: "The right to be heard in all civil cases in the court of last resort, by appeal, error, or otherwise, shall not be denied." These provisions considered together, make it plain that the determination of a civil matter by a judge at chambers is not final. The Code of Civil Procedure (sec. 582) provides: "A judgment rendered or final order made by the district court may be reversed, vacated, or modified by the supreme court, for errors appearing on the record." The word "court," as here used, has always been construed to mean, not only the tribunal over which a judge presides, but the judge himself when exercising, at chambers, judicial power conferred by statute. *Smith v. State,* 21 Nebr., 552; *Clark v. State,* 24 Nebr., 263; *In re Van Sciever,* 42 Nebr., 772; *Horton v. State,* 60 Nebr., 701.

We will now consider the character of the power conferred upon the judiciary by section 137 of the Australian ballot law. (Compiled Statutes, 1899, ch. 26.) So far as material to this inquiry the section reads: "All certificates of nomination which are in apparent conformity with the provisions of this act shall be deemed to be valid, unless objection thereto shall be duly made in writing within three days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence as given in the certificate of nomination. Objections to

use of party name may also be made and passed upon in the same manner as objections to certificates. The officer with whom the original certificate was filed shall in the first instance pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by a county court, or by a judge of the district court, or by a justice of the supreme court at chambers, on or before the Wednesday preceding the election. Such order may be made summarily upon application of any party interested, and upon such notice as the court or judge may require. The decision of the secretary of state, or the order of the judge, or supreme court justice revising such decision, shall be binding on all other county, municipal, or other officers with whom certificates of nomination are filed." That the authority given by this statute to the county court and to the judges of the district and supreme courts is in its nature judicial, we are entirely satisfied. It is to be presumed that the legislature intended to enact a constitutional law, and it is evident that this law would not be constitutional if the power conferred by it upon the judiciary is a non-judicial power. "The powers of the government of this state," says the constitution, "are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." Constitution, art. 2. There being no express direction or permission which would make the power in question an exception to the general rule, the conclusion is inevitable that the legislature intended to give the judicial officers mentioned in the statute, an authority which they might lawfully exercise and none other. In other states the courts have, under similar statutes, exercised a revisory jurisdiction over the decisions of ministerial officers charged with the duty of preparing the official ballot. *People v. District Court*, 23 Colo., 150; *Leighton v. Bates*, 50 Pac. Rep. [Colo.],

856; *Schuler v. Hogan*, 168 Ill., 369; *Fernbacher v. Roosevelt*, 90 Hun [N. Y.], 441.

Having concluded that the case is properly before us, we proceed now to determine the single question of substantive law presented by the record. Section 131 of chapter 26, Compiled Statues, 1899, declares: "Electors may form new parties and hold their state, district, county, precinct or municipal conventions and nominate candidates for office. They shall not adopt any of the old party names nor any part thereof, and when such electors to the number of two hundred participate in a state convention, or fifty in a congressional, district or county convention, or twenty-five in any precinct, city, village or ward convention, they may make party nominations for either state or congressional, county, district, precinct, municipal or ward offices, but the certificate of nomination shall contain the name of the new party that said electors may have adopted, and shall state in addition in the certificate of nomination required to be filed by section one hundred and twenty-nine of this act, as the case may require, that said new party had at least two hundred persons participating in said state, fifty in said congressional, district, county or municipal convention, and at least twenty-five in said precinct, ward, or village convention, and when otherwise in conformity to law may be filed with the respective officers as provided by section one hundred and twenty-nine of this act." The name adopted by the new political organization at its convention held in Grand Island on July 20, 1900, and certified as required by law, was "Populist." To the use of this name objection was seasonably made on behalf of candidates nominated by the People's Independent party; and the secretary of state, after having accorded the parties in interest a full hearing, sustained the protest and decided that the new party should be designated upon the official ballot as "Mid-Road Populist." This decision was, in an appropriate proceeding, set aside by Judge HOLMES, who held that the new party was entitled

to use, for the purposes of the election, the name which it had adopted. We think that while the decision of the secretary of state may not have been entirely right, that of Judge Holmes was altogether wrong. The legislative purpose in forbidding the adoption and use of an old party name by a new political organization, was to avoid confusion in voting and to prevent fraud at elections; to enable the elector to express, with certainty, his real choice of candidates, and to eliminate, as far as possible, from the ballot whatever might tend to deceive or delude him into casting a vote contrary to his intention and for persons to whom he is opposed. That this is the design and intention of the law seems to be conceded, but counsel for defendants in error claim that the legislative interdict goes only to the old party name which is certified by the convention of an existing party to the proper officer for the purpose of being placed upon the official ballot. We can not accept this view of the matter; indeed we think it is not entitled to serious consideration. Where there is room for judicial interpretation it should be always assumed that the legislature intended to employ means adequate to the attainment of its purpose; and the courts should, in cases of doubt, adopt that exposition of the law which will give effect to the legislative will rather than a construction which may frustrate or obstruct it. This court will take judicial cognizance of the political history of the state. We know, judicially, that the People's Independent party, from the date of its organization, has been generally and popularly known, here and elsewhere, as the "Populist" party. In the Standard Dictionary a populist is said to be "a member of the People's party." The People's party is in the same work described as "a political organization formed in the United States February 22, 1892;    *    *    *    called also Populist party." It thus appears that when the Australian ballot law was enacted, the legislature must have known that one of the existing political parties in this state was known by two names, and as well known by

one as by the other. The members of the legislature must have known too, a fact of which no one else pretends to be ignorant, namely, that the adoption of the name "Populist" by a new party and the use of that name on the official ballot would deceive and mislead many citizens who affiliate with the People's Independent party and who believe in its doctrines and desire to vote for the nominees of its conventions. Having with full knowledge of existing conditions undertaken to protect the elective franchise by forbidding the use of an old party name by a new political organization, we can not believe that the legislature intended to limit its inhibition to the name certified to the secretary of state by the officers of the nominating convention, and thus provide an insufficient safeguard against the evil apprehended.

The order of Judge Holmes we believe to be unwarranted, and it is therefore

REVERSED.

NORVAL, C. J., offered no opinion.