Sartin v. Snell.

---

U. S. SARTIN, *Plaintiff,* v. W. D. SNELL, *Defendant.*

No. 18,085.

SYLLABUS BY THE COURT.

1. STATUTE—*Authorizing Appointment of County Auditor—Valid.* Article 13 of chapter 25 of the General Statutes of 1909 (Gen. Stat. 1909, §§ 2282-2299), creating the office of county auditor in certain counties and conferring upon the district court the power of appointing a suitable person to such office is a valid exercise of legislative authority.

2. THE TERMS—*"Court," "Judge"—"District Court," "District Judge," construed.* The legislature often uses the words

"court" and "judge," "district court" and "district judge," without discrimination. "Court" will be construed to mean "judge" and "judge" will be construed to mean "court" wherever either construction is necessary to carry into effect the obvious intent of the legislature. It is held, therefore, that by the words "district court," as used in section 1 of the act in question (Gen. Stat. 1909, § 2282) the legislature meant to confer upon the judge of the district court in certain counties authority to appoint a county auditor.

3. COUNTY AUDITOR—*Confirmation by County Commissioners.* Under the statute as amended by section 1 of chapter 67 of the Laws of 1876, and subsequent amendments thereto, confirmation by the board of county commissioners of the appointment of a county auditor is not necessary.

4. ———— *Appointment—Judges of District Court.* Where the district court consists of two or more divisions the appointment of a county auditor, in order to be valid, must be made by the judges of the divisions, or a majority thereof, acting jointly.

Original proceeding in quo warranto. Opinion filed June 8, 1912. Judgment of ouster.

*James F. Getty,* and *Nathan Cree,* for the plaintiff.

*L. W. Keplinger,* and *C. W. Trickett,* for the defendant.

The opinion of the court was delivered by

PORTER, J.: This is a proceeding in quo warranto in which the plaintiff seeks to oust the defendant from the office of county auditor of Wyandotte county. The cause has been submitted upon plaintiff's motion for judgment on the pleadings. The facts as shown by the petition and answer are that on the 20th day of November, 1911, the defendant was appointed to the office of county auditor by Hon. E. L. Fischer, judge of the first division of the district court of Wyandotte county, and filed his oath and bond and claims the right to the office under such appointment. The plaintiff was appointed to the same office on February 8, 1912, by the Hon. E. L. Fischer, judge of the first

division, and the Hon. F. D. Hutchings, judge of the second division of the district court, acting jointly. The plaintiff, after taking the oath of office and after the approval of his bond, demanded of the defendant the office and the books and documents pertaining thereto. The defendant refuses the demand, and in his answer contends that his appointment having been made by the district court and confirmed by the board of county commissioners, he is entitled to hold the office; that there is no authority in law for either a judge of the district court or the judges of the divisions thereof to make the appointment, and further, that the plaintiff's alleged appointment to the office has never been confirmed by the board of county commissioners, and that without such confirmation his appointment is invalid. He further contends that he has been employed by the board of county commissioners to perform services of auditing bills and accounts against the board, and in this connection he questions the constitutionality of the statute creating the office and providing for the appointment of a county auditor by the district court. His main contention, however, is that the statute creating the office and providing for the method of filling it expressly confers the power of appointment upon the district court and not upon a judge or judges of the court. The act creating the divisions of the district court in counties having a population of one hundred thousand inhabitants contains a provision that all power of appointment formerly delegated by law to the judge of the district court shall be exercised jointly by the judges of the divisions. The defendant claims that this provision does not apply to the appointment of a county auditor, for the reason that such power was never delegated to a district judge but was conferred only upon the district court.

The first question to be considered is whether the act conflicts with the constitution. If it be found in-

valid, that disposes of the case and renders unnecessary the determination of the other questions. It is assailed on the ground that the legislature has no power to delegate to or impose upon the courts the authority to appoint an auditor. It is conceded that courts may be given authority to appoint such officers as are necessary to the existence of a court, as a clerk or reporter or bailiff, or an officer necessary to enable the court to transact business, such as a prosecuting attorney. But it is contended that as the duties performed by a county auditor have no connection with the functions of the district court, the legislature can not, without mingling the powers of the different branches of government, impose upon the court the authority to appoint such an officer. The law creating the office of county auditor and authorizing the district court to appoint auditors in certain classes of counties has been in existence since 1872, and a serious burden rests upon him who, at this late day, seeks to establish its invalidity. In 1872 the legislature passed an act creating the office of county auditor in all counties containing over thirty thousand inhabitants. (Laws 1872, ch. 67.) Section 1 required that the auditor be appointed by the district court and confirmed by the board of county commissioners. In 1874 this section was amended (Laws 1874, ch. 56, § 1) so as to provide that the auditor be appointed by the district court "in conjunction with the probate court and county attorney of such county, and confirmed by the board of county commissioners." The legislature of 1876 passed two acts amending section 1. The first changed the whole plan of appointment and provided that in all counties having over twenty-five thousand inhabitants a county auditor should be appointed "by the probate court of the judicial district" in which the county was embraced. (Laws 1876, ch. 66, § 1.) There was evidently a mistake in the description of the court, and at the same session this chapter was repealed and

chapter 67 enacted, by which the power of appointment was placed upon the "district court," nothing being said as to confirmation by the county board. Section 1 of the act has been amended at various times since 1876, and the classification of counties to which the act applies changed, as in chapter 87 of the Laws of 1891, which makes the act apply to counties having over forty-five thousand inhabitants, but the language of the section remains the same and directs the appointment by the district court and no longer requires confirmation by the county board. During all the time the law has been in operation, county auditors have been appointed in the counties embraced in the class defined by the various acts, except, we believe, in two instances. Mr. Justice Benson, when judge of the fourth judicial district, refused to appoint an auditor for Douglas county, and Judge Spilman, of the twenty-first district, refused to appoint one for Osage county, the judge, in each instance, holding that the duty is one which the legislature lacked the power to compel a court or judge thereof to perform.

A strong argument can be adduced against the fitness and propriety of making the courts the dispensers of public patronage, which, in the language of Judge Spilman, in the opinion *In the Matter of the Appointment of a County Auditor for Osage County,* reported in The Kansas Law Journal (vol. 2, p. 57), "does violence to all our ideas of judicial propriety, and confers a power upon the courts which must always prove embarrassing, and even if wisely exercised must inevitably tend to lessen the respect felt by the people for the purity and dignity of the judiciary." (p. 58.)

However we may disagree with the legislature as to the propriety of the law, we must, if possible, uphold its validity. The fact that it has remained upon the statute books for forty years, receiving from time to time further legislative consideration and sanction, adds to the requirement that urgent reasons be found

before it shall be declared unconstitutional. The mere fact that a judge of the district court could not be compelled to comply with its provisions, or be held to have forfeited his office by a failure or refusal to obey the statute, is of no importance in determining whether or not the statute is a valid exercise of legislative authority. In *The State, ex rel., v. Brown, Probate Judge*, 35 Kan. 167, 10 Pac. 594, which was an action in quo warranto to forfeit the right of Brown to exercise the office of probate judge of Coffey county because of an alleged failure to perform certain duties imposed by section 3 of chapter 8 of Special Session Laws of 1874, requiring the probate judge once in each quarter to examine and count the funds in the hands of the county treasurer, it was held that in the performance of the duty of examining the accounts of the county treasurer the probate judge is not acting either as a judge or as a court, and that his failure to comply with the statute imposing such new duty furnished no ground of forfeiture of his office as probate judge.

In *The State v. Durien*, 70 Kan. 13, 80 Pac. 987, involving the provisions of the statute imposing upon the probate judge authority to grant permits for the sale of intoxicating liquors, it was said in the opinion:

"The duties to be discharged are cast upon the person at the time holding the office of probate judge, and not upon him as probate judge, or upon the probate court." (p. 41.)

Conceding that the legislature has no authority to compel the district court or the district judge to perform duties which are not judicial in their nature, the refusal or neglect to perform which would constitute a dereliction of official duty or subject the judge to forfeiture of his judicial office, may it not be a valid exercise of legislative authority to impose upon the district judge the power to appoint an officer whose duties have no relation to or connection with the court or judge, leaving it to the judge to decide for himself whether

Sartin v. Snell.

he will exercise or refuse to exercise the power? It may be conceded that the duties of a county auditor as prescribed by the statute have no relation to any of the functions of the district court and that a judge of such court could not by mandamus be compelled to perform the duty imposed by the statute, and that his refusal would not be subject to review and would not work a forfeiture of his office as judge. We construe the act as imposing the power not upon the court but upon the judge, notwithstanding the statute declares that the appointment shall be made by the district court. The legislature often uses the words "court" and "judge of the court," "district court" and "judge of the district court" without discrimination. Whenever the power or duty imposed is found from a consideration of the object and purposes of the act to be one which is more properly the function of the court, it will be so construed, and whenever it is manifest that the legislature meant the judge and not the court, that meaning will be applied to the words in order to carry out the legislative intent. "Court" will always be interpreted to mean "judge" when necessary to carry into effect the intention of the legislature. (*Railroad Co. v. McDonald*, 79 Miss. 641, 31 South. 417; *Porter v. Flick*, 60 Neb. 773, 84 N. W. 262; *Von Schmidt v. Widber*, 99 Cal. 511, 34 Pac. 109; *Michigan Central Railroad Company v. Northern Indiana Railroad Company*, 3 Ind. 239; *Rogers v. Beauchamp et al.*, 102 Ind. 33, 1 N. E. 185; *Lee County v. Nelson*, [Iowa] 4 G. Greene, 348 [where it was said they are convertible terms] ; 11 Cyc. 655, 656; 2 Words & Phrases, p. 1678.)

Obviously the legislature had no thought of having the appointment made by the court, but, reposing confidence in the integrity and discretion of the person who happened to hold the office of judge of the district court, intended that he personally should name the auditor. The power conferred is not in any sense judi-

cial, because the office in no manner affects the business or functions of the court. One argument made by the defendant in support of his contention that the power was intended to be imposed upon the court and not upon the judge is based upon the fact that the legislature, at an earlier session, expressly conferred the power of appointment upon the district judge, in providing for filling vacancies in the office of county attorney. But it is manifest that in both instances the legislative intent was to impose the power upon the judge and not upon the court.

There is, after all, nothing very anomalous in the plan devised for the selection of a county auditor when we consider that in Kansas various ways are employed for the selection of public officers. Some must be chosen at a general election, in obedience to constitutional requirements; others may be appointed, and the legislature has by no means restricted the power of appointment in all cases to the executive branch of government. On the contrary, by a rather anomalous arrangement, which, so far as we are aware, does not obtain in any other state, several important state officers are chosen neither at an election by the people at large nor by the executive power. For instance, the secretary of agriculture, recognized by the legislature as a state officer, with powers and duties imposed upon him, and with an annual salary of $3500, is chosen by the members of the State Agricultural Society at its annual meeting. The membership of this society is composed of delegates from county or district agricultural societies. Usually less than one hundred persons attend the annual meeting and participate in the election of the secretary. The legislature, in fact, has simply adopted the voluntary association known as the State Agricultural Society and annually makes appropriations to provide salaries for the secretary and assistants appointed by him and for the publication and

distribution of his reports and pamphlets. The State Historical Society is a voluntary association of which any person in the state may become an active member on the payment of a fee of one dollar annually, or by payment of ten dollars may become a life member. There are one hundred and sixty life members and three hundred active members, people of both sexes, from infancy to old age. The annual meeting in January is usually attended by less than one hundred persons, a majority of whom elect a secretary for one year. The legislature some years ago adopted this association as one of the departments of state government, and each successive legislature has appropriated funds to pay the salaries of the secretary of the society and assistants and employees appointed by him, and has made provision for the publication of the secretary's reports and for securing and caring for objects of historical interest and for gathering historical data.

Another instance is the office of commissioner of labor. He is chosen at an annual meeting of delegates to the Society of Labor and Industry as secretary of the society, and, by an act of the legislature, is made state labor commissioner. Whenever seven or more laborers, workingmen, miners, railway employees or mechanics or other wage earners shall organize as a labor organization for the improvement of labor conditions the society is entitled to send to the annual meeting a delegate for each fifty members or fraction thereof, and this meeting selects the officer who is to become an officer of the state. The legislature appropriates money for his salary and provides for the performance of his duties. (*Titus v. Sherwood,* 81 Kan. 870; 106 Pac. 1070.)

The secretary of the State Horticultural Society is chosen by the members of that voluntary association and becomes thereby a state officer whose duties, powers and emoluments are prescribed by the legislature. The

state mine inspector is chosen in the same manner at an annual meeting of the State Association of Miners, made up of delegates from voluntary associations of persons engaged in the occupation of mining coal for wages. The person chosen by the annual meeting as secretary of the association thereby becomes state mine inspector.

Whether these voluntary associations, which are all incorporated under the laws of the state, could be compelled to hold elections and exercise the power thus conferred upon them, in case of neglect or refusal so to do, is a question which has never been raised. So long as the power is exercised and the offices are filled in the manner prescribed by the legislature no one will doubt the right of the persons so chosen to hold their offices. The constitution contains no inhibition upon the power of the legislature to provide as it may deem best the method for the appointment of officers whose election or appointment is not otherwise provided for. On the other hand, the constitution expressly declares that "all officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law." (Const. art. 15, § 1.) It will thus be seen that the constitution has placed in the legislature the power to regulate the mode of appointing officers not otherwise provided for. In view of the power thus expressly conferred upon the legislature it seems unnecessary to refer specially to cases from other states, though numerous decisions might be cited where, under constitutions similar to ours, the authority of the legislature to confer upon judges and courts the power to appoint inferior officers whose duties have no connection with the functions of courts is recognized. (*The People, ex rel., v. Hoffman et al.*, 116 Ill. 587, 5 N. E. 596, 56 Am. Rep. 793; *The People v. Board of Supervisors*, 223 Ill. 187, 79 N. E. 123; *The People v. Evans*, 247 Ill. 547, 93 N. E. 388; *City of*

*Indianapolis v. State, ex rel.*, 172 Ind. 472, 88 N. E. 687; *In re Appointment of Revisor*, 141 Wis. 592, 124 N. W. 670.)

Upon the question whether the power to appoint to office is a legislative, executive, or judicial function the late Mr. Freeman, in a monographic note to *People v. Freeman*, 80 Cal. 233, 22 Pac. 173, used the following language:

"The truth is, that the power of appointing or electing to office does not necessarily and ordinarily belong to either the legislative, the executive, or the judicial department. It is commonly exercised by the people, but the legislature may, as the law-making power, when not restrained by the constitution, provide for its exercise by either department of the government, or by any person or association of persons whom it may choose to designate for that purpose. It is an executive function when the law has committed it to the executive, a legislative function when the law has committed it to the legislature, and a judicial function, or at least a function of a judge, when the law has committed it to any member or members of the judiciary." (13 Am. St. Rep. 122, 130.)

It is apparent, therefore, that it is a valid exercise of legislative authority to impose upon the judge of the district court the power of appointing a county auditor.

The law being constitutional, there remains the question as to who shall make the appointment in counties where there are two or more judges of the district court. In 1909 an act relating to district courts and courts of common pleas was passed, by which provision was made for two divisions of the district court until 1913, when the act creating the court of common pleas should expire by limitation, at which time the act provides that the district court in such counties shall consist of three divisions. The act (Laws 1909, ch 112, Gen. Stat. 1909, §§ 2445-2458) applied to counties having one hundred thousand inhabitants, and at present

affects Wyandotte county alone. Section 4 of the act provides as follows:

"All powers of appointment, not herein provided for, which are delegated by law to the judge of the district court, shall be exercised jointly by the judges of the divisions, or a majority thereof."

The appointment of the defendant by the judge of the first division is therefore void, and the appointment of the plaintiff by the joint act of the judges of both divisions is valid. Section 1 of the act of 1872 (Laws 1872, ch. 67), as we observed, required the appointment to be confirmed by the board of county commissioners. The section was afterwards amended at various times and the provision requiring confirmation stricken out. The legislature, however, never saw fit to change the language of section 2, which still reads, "and after his confirmation by the county board, as provided herein." Since the amendment of section 1 there is nothing for these words to operate upon. All provision for confirmation was repealed by the change in section 1, and, obviously, the legislature overlooked the presence of the words in section 2 which refer to confirmation. No confirmation being necessary it follows that plaintiff is entitled to the office and judgment of ouster against the defendant will be ordered.