Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/10/2022 08:07 AM CDT

The Nebraska Republican Party and the Lancaster County Republican Party, appellants, v. David J. Shively, in his official capacity as Lancaster County election commissioner, and Adam S. Morfeld, interested party, appellees.

___ N.W.2d ___

Filed March 14, 2022.    No. S-22-132.

1. **Jurisdiction: Statutes.** Subject matter jurisdiction and statutory interpretation present questions of law.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
4. **Evidence: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.
5. **Appeal and Error.** In an appeal from a proceeding under Neb. Rev. Stat. § 32-624 (Reissue 2016), a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.
6. **Judgments: Appeal and Error.** In reviewing a judge's order under Neb. Rev. Stat. § 32-624 (Reissue 2016), an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.
7. ____: ____. Regarding a question of law in an appeal from an order made pursuant to Neb. Rev. Stat. § 32-624 (Reissue 2016), an appellate court has an obligation to reach a conclusion independent from a judge's conclusion in an order under review.

8. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

9. **Constitutional Law: Jurisdiction: Appeal and Error.** Except in those cases wherein original jurisdiction is specifically conferred by Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appellate jurisdiction.

10. **Courts: Jurisdiction: Legislature: Appeal and Error.** In order for the Nebraska Supreme Court to have jurisdiction over an appeal, appellate jurisdiction must be specifically provided by the Legislature.

11. **Constitutional Law.** Neb. Const. art. II, § 1(1), divides the powers of the government into three departments—legislative, executive, and judicial—and dictates that no person or collection of persons being one of these departments shall exercise any power properly belonging to either of the others except as expressly directed or permitted in this Constitution.

12. **Courts: Jurisdiction: Legislature: Appeal and Error.** The Legislature has given the Nebraska Supreme Court appellate and final jurisdiction of all matters of appeal and proceedings in error which may be taken from the judgments or decrees of other courts in all matters of law, fact, or equity.

13. **Final Orders: Appeal and Error.** Neb. Rev. Stat. § 25-1911 (Reissue 2016) authorizes appellate review of a final order made by the district court.

14. **Courts: Judges: Statutes: Words and Phrases.** The word "court" as used in Neb. Rev. Stat. § 25-1911 (Reissue 2016) has always been construed to mean, not only the tribunal over which a judge presides, but the judge himself or herself when exercising, at chambers, judicial power conferred by statute.

15. **Appeal and Error.** A party cannot complain of error which the party has invited the court to commit.

16. ____. Appellate courts do not generally consider arguments and theories raised for the first time on appeal.

17. ____. An appellate court does not consider errors which are argued but not assigned.

18. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

19. **Statutes: Voting.** Statutes relating to election law must be liberally construed so as to promote, rather than defeat, candidacy for the primary election.

20. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.

21. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.

22. **Statutes: Legislature.** It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.

23. **Attorneys at Law: Words and Phrases.** As used in Neb. Rev. Stat. § 23-1201.02(1) (Reissue 2012), "practiced law actively" means engaged in giving advice or rendering such service as requires the use of any degree of legal knowledge or skill and doing so on a daily or routine basis.

24. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

25. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

David A. Lopez and Amanda L. Wall, of Husch Blackwell, L.L.P., for appellants.

Randall L. Goyette and Christopher M. Schmidt, of Baylor Evnen, L.L.P., for appellee David J. Shively.

Andre R. Barry and Jessica K. Robinson, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Adam S. Morfeld.

Miller-Lerman, Cassel, Funke, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

Adam S. Morfeld filed for election as Lancaster County Attorney. Objectors sought to exclude him from the primary

election ballot,[1] on the ground that he had not "practiced law actively" for the statutory period.[2] The election commissioner denied the objection. The objectors then filed an application to a district court judge under § 32-624. After the judge denied the application and requests to conduct discovery and expand the record, this appeal followed.[3]

Due to the summary nature of a proceeding under § 32-624, we find no abuse of discretion by the district court in denying discovery. Based on the plain and ordinary meanings of "practiced law" and "actively," we conclude that Morfeld's routine activities in connection with his employment as executive director fall within the meaning of "practiced law actively" and that he has engaged in such activities for the relevant 2-year period. Because we conclude that Morfeld satisfies the statutory qualifications to seek nomination for the office of county attorney, we affirm the order of the district court.

## BACKGROUND

### Statutory Provisions Regarding
### County Attorney Candidates

With certain exceptions,[4] a county attorney is elected in each county at the statewide general election every 4 years.[5] Candidates for the office of county attorney must meet qualifications contained in §§ 23-1201.01 and 23-1201.02.[6] The latter statute sets forth requirements for one seeking nomination in a county such as Lancaster County:

(1) No person shall seek nomination or appointment for the office of county attorney . . . , nor serve in

---

[1] See Neb. Rev. Stat. § 32-624 (Reissue 2016).

[2] See Neb. Rev. Stat. § 23-1201.02(1) (Reissue 2012).

[3] See Neb. Rev. Stat. § 25-1911 (Reissue 2016).

[4] See Neb. Rev. Stat. § 23-1201.01 (Reissue 2012).

[5] See Neb. Rev. Stat. § 32-522 (Reissue 2016).

[6] See *id.*

that capacity, unless he or she has been admitted to the practice of law in this state for at least two years next preceding the date such person would take office and has *practiced law actively in this state during such two-year period*, except that if no person who meets the requirements of this subsection has filed for or sought such office by the filing deadline for nomination or by the deadline for applications for appointment, the provisions of this subsection shall not apply to any person seeking such office.

(2) No person shall seek nomination or appointment for the office of county attorney, nor serve in that capacity, unless he or she has been admitted to the practice of law in this state.[7]

The italicized portion is the focus of this appeal.

## CANDIDATE FILING FORM

Morfeld timely filed to be a Democratic candidate for Lancaster County Attorney in the primary election to be held on May 10, 2022. Morfeld's signature appeared below the statutorily required statement: "I hereby swear that I will abide by the laws of the State of Nebraska regarding the results of the primary and general elections, that I am a registered voter and *qualified to be elected*, and that I will serve if elected."[8] Unless objections are made, a candidate filing form which appears to conform with Neb. Rev. Stat. §§ 32-606 (Supp. 2021) and 32-607 shall be deemed to be valid.[9]

## OBJECTION

An objection ensued. The Nebraska Republican Party and The Lancaster County Republican Party (collectively the objectors) challenged Morfeld's candidate filing form. In a

---

[7] § 23-1201.02 (emphasis supplied).

[8] See Neb. Rev. Stat. § 32-607 (Cum. Supp. 2020) (emphasis supplied).

[9] See § 32-624.

letter to David J. Shively, the Lancaster County election commissioner, the objectors alleged that Morfeld had not practiced law and had not done so actively during the 2-year period referenced in § 23-1201.02(1). The letter also set forth the objectors' legal argument.

## Morfeld's Response and Affidavit

Morfeld responded to the objection by letter, which supplied his legal argument. He also provided an affidavit regarding his qualification to seek nomination. Morfeld was admitted to the practice of law in 2012 and met all the requirements to be licensed in the State of Nebraska, including the "MCLE" (which we understand to mean mandatory continuing legal education[10]) requirements of the Nebraska Supreme Court.

Morfeld's affidavit stated that he has been employed continuously full time as the executive director of Civic Nebraska, which is an organization having over 75 employees and three offices in Nebraska. As executive director, Morfeld routinely provides legal advice, direction, and supervision to Civic Nebraska. Morfeld further stated that he personally provides legal advice to voters and day-to-day supervision of Civic Nebraska's election attorney concerning such advice. Civic Nebraska pays for Morfeld's annual license fees, MCLE costs, and professional liability insurance as an attorney.

The affidavit stated that in 2020 and 2021, Civic Nebraska supported challenges to a Nebraska statute providing for the appointment of election commissioners. Morfeld stated in his affidavit that in connection with the effort, Civic Nebraska supported cases filed in Hall and Lancaster Counties and submitted an amicus brief on the issue in the Nebraska Supreme Court. Morfeld stated that he oversaw those activities on behalf of Civic Nebraska, helped to develop and evaluate legal positions and arguments, and directed and supervised the work of internal and external counsel for Civic Nebraska.

---

[10] See Neb. Ct. R. § 3-401.1.

According to Morfeld's affidavit, on a routine basis and continuously since 2012, he provides the type of legal advice to Civic Nebraska that in-house counsel provides in other companies, including ongoing legal advice to the corporation regarding contracts, leases, "501(c)(3) and 501(c)(4)" compliance, and matters of employment law.

His affidavit also stated that Civic Nebraska is currently opposing a voter identification ballot initiative and that Morfeld is providing legal advice in connection with that effort.

Morfeld stated that between December 2018 and October 2021, he was a cochair of Nebraskans for Medical Marijuana, a ballot question committee. He was involved in the formation of a new ballot question committee, called NMM, in November 2021. He is a cosponsor of two ballot initiatives for the committee, one involving removing penalties for medical cannabis and another addressing regulation of cannabis establishments. Morfeld stated that he has provided legal advice to these ballot question committees and to the cosponsor of the ballot initiatives on compliance with Nebraska laws.

According to the affidavit, Morfeld has also served as a state senator in the Nebraska Legislature since 2014. He stated that as a member of the Legislature's Judiciary Committee since 2015, he uses his legal training and skills as a licensed attorney. He has drafted, introduced, and passed into law numerous pieces of legislation, and he has provided legal analysis and assistance to legislative staff and other state senators. In 2021, Morfeld was appointed to the Legislature's Redistricting Committee, where he has provided legal advice to other state senators on the constitutionality and legality of proposed redistricting maps.

## OBJECTORS' REPLY AND AFFIDAVIT OF COUNSEL

The objectors sent a reply letter to the commissioner to address Morfeld's explanation regarding his practice of law. Their attorney submitted an affidavit with two exhibits attached.

One was a copy of a Nebraska Accountability and Disclosure Commission "Form B-1" filed by the NMM ballot question committee. It showed that for the period ending October 26, 2021, NMM had paid $15,000 for "Legal Research" from the "Fraser Stryker PC LLO" law firm.

The other was a copy of a complaint filed in the district court for Hall County, Nebraska, concerning a challenge to the Nebraska statute providing for the appointment of election commissioners. The complaint was signed only by an attorney with the Cline Williams Wright Johnson & Oldfather, L.L.P., law firm.

### Commissioner's Determination

On February 9, 2022, the commissioner overruled the objection. His determination did not contain findings of fact or specific citations of law. The commissioner stated that "in interpreting the relevant statutory language in the manner directed by recent precedent and applying this language to the evidence submitted to me, I conclude that . . . Morfeld meets the statutory requirements to be placed on the ballot."

### Application to District Court Judge

The next day, the objectors filed an application for a special proceeding relating to elections in the district court for Lancaster County. They requested a "summary order" under § 32-624. The objectors alleged that Morfeld was not qualified as a matter of law or fact to appear on the ballot for the office of Lancaster County Attorney. They sought an order compelling the commissioner to sustain their objections and remove Morfeld's name from the May 2022 primary election ballot.

### Request for Discovery

In connection with the objectors' motion for expedited case progression, they requested discovery on the factual issue of how Morfeld practiced law actively during the applicable statutory period. The objectors proposed that they serve written

discovery on Morfeld by February 11, 2022, that Morfeld be ordered to respond by February 21, and that they take Morfeld's deposition on or about February 24.

On February 11, 2022, the court heard the motion for expedited case progression. Four days later, the court entered an order. It stated that the nature of its review under § 32-624 was not readily apparent. But it reasoned that "importing all of Chapter 25 into § 32-624—including the civil discovery rules authorized by the statutes—is antithetical to the summary nature of judicial review under § 32-624." The court ordered that at a final submission hearing on February 24, items in the record before the commissioner would be offered and any party wishing to offer evidence that was not presented to the commissioner would be allowed to make an offer of proof.

## Final Submission Hearing

As scheduled, the court held a hearing "to make a record of evidence and then proceed with some argument." The objectors informed the court of their "standing objections" as to the disallowance of discovery and presentation of evidence beyond the election commissioner's record. The objectors offered exhibits and requested to call Morfeld as a witness at the hearing. Morfeld objected, and the court sustained the objections. The objectors made an offer of proof. The court again rejected the exhibits propounded in the offer of proof and the request to call Morfeld as a witness.

## District Court's Decision

On March 2, 2022, the district court denied the application via a 13-page order. The court limited its review to the record made before the commissioner. It determined that its review under § 32-624 was de novo on both the facts and the law.

In the court's thorough order, it concluded that the objectors failed to carry their burden of showing that Morfeld had not practiced law in a constant, daily, or routine manner during the relevant period. As evidence that Morfeld has

actively practiced law, the court recognized Morfeld's statements in his affidavit that "he provides legal advice regarding contracts, leases, nonprofit compliance, and employment law to Civic Nebraska 'continuously' and '[o]n a routine basis'"; that "he personally has provided legal advice to individual voters in state, local, and federal elections"; and that he "has also co-sponsored two ballot initiatives and advised the ballot question committees on the single-subject rule, the Nebraska Election Act, and the Nebraska Accountability and Disclosure Act."

The objectors promptly appealed. We moved the appeal to our docket.[11] We also implemented an expedited schedule for briefing and oral argument.

## ASSIGNMENTS OF ERROR

The objectors assign four errors. They allege, reordered and consolidated, that the district court erred in (1) denying discovery after finding the proceeding was limited to the record before the commissioner, (2) interpreting "practiced law" under § 23-1201.02(1) to be determined by "'the nature of the act'" rather than "'the forum or object of the act,'" and (3) finding Morfeld met the "'practiced law'" and "'active[ly]'" requirements under § 23-1201.02(1).

## STANDARD OF REVIEW

[1-3] Subject matter jurisdiction and statutory interpretation present questions of law.[12] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[13] An appellate court independently reviews questions of law decided by a lower court.[14]

---

[11] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020) and Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[12] *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021).

[13] *Id.*

[14] *Id.*

[4] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[15]

The standard of review for an *appeal* from the order of a single judge under § 32-624 is unsettled. The objectors assert that the question is whether the district court's decision conforms to the law and that it is a pure question of law. Morfeld, on the other hand, suggests that the standard of review applicable to petitions in error is appropriate. Morfeld asserts that under such a standard, the question is whether sufficient, relevant evidence supports the decision of the election official.[16]

[5-7] A special statutory proceeding under § 32-624 is somewhat akin to mandamus.[17] An action for a writ of mandamus is a law action.[18] In determining our standard of review, we borrow from our mandamus jurisprudence and adopt a similar standard of review here. In an appeal from a proceeding under § 32-624, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.[19] In reviewing a judge's order under § 32-624, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[20] Regarding a question of law in an appeal from an order made pursuant to § 32-624, an appellate court has an obligation to reach a conclusion independent from a judge's conclusion in an order under review.[21]

---

[15] *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

[16] See *Douglas County v. Archie*, 295 Neb. 674, 891 N.W.2d 93 (2017).

[17] See *State, ex rel. Meissner, v. McHugh*, 120 Neb. 356, 233 N.W. 1 (1930).

[18] *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992).

[19] See *id.*

[20] See *id.*

[21] See *id.*

## ANALYSIS

### Jurisdiction

[8] It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[22] No party challenges this court's jurisdiction, and we agree that the appeal is properly before us.

It is a rare occasion when a case involving a special proceeding under § 32-624 (or its predecessor statute) comes before this court[23] in contrast with a single justice of this court. But the infrequency is likely driven by the small window of time to seek review rather than a perceived lack of jurisdiction. As we explained in dismissing the appeal in *Nebraska Republican Party v. Gale*,[24] "no relief may be afforded to the party from [a judge's] order after the 55th day" preceding the election. Here, the district court judge admirably resolved the matter quickly, leaving time for the aggrieved party to seek appellate review. Because in *Nebraska Republican Party* we recognized "uncertainty in our case law and orders of this court in appeals from such proceedings" and "assume[d] without deciding that subject matter jurisdiction does exist,"[25] we take this opportunity to resolve any jurisdictional uncertainty.

[9,10] We start by recalling fundamental principles of our jurisdiction. Except in those cases wherein original jurisdiction is specifically conferred by Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appellate jurisdiction.[26] In order for this court to have jurisdiction over an appeal,

---

[22] *North Star Mut. Ins. Co. v. Stewart, ante* p. 33, ___ N.W.2d ___ (2022).

[23] See, *Nebraska Republican Party v. Gale*, 283 Neb. 596, 812 N.W.2d 273 (2012); *State, ex rel. Quinn, v. Marsh*, 141 Neb. 436, 3 N.W.2d 892 (1942); *Porter v. Flick*, 60 Neb. 773, 84 N.W. 262 (1900).

[24] *Nebraska Republican Party v. Gale, supra* note 23, 283 Neb. at 599, 812 N.W.2d at 276.

[25] *Id.* at 599, 812 N.W.2d at 275.

[26] *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017).

appellate jurisdiction must be specifically provided by the Legislature.[27] In other words, unless a statute provides for an appeal, such right does not exist.[28]

Section 32-624 authorizes a special, summary proceeding before a judge of the district court. When an objection to a candidate filing form is made and the filing officer has determined the validity of the objection, an application can be made to a judge of, among other identified courts, the district court.[29] The judge's order "may be made summarily upon application of any political party committee or other interested party and upon such notice as the court or judge may require."[30]

In *Porter v. Flick*,[31] we addressed our appellate jurisdiction while construing a statute[32] similar to § 32-624. Although the precise language of some of the statutes and constitutional provisions has changed since this court's decision in 1900, we find the analytical path in *Porter* to be instructive.

[11] In *Porter*, we started with the presumption that the Legislature intended to enact a constitutional law. We explained that the law would be unconstitutional if it conferred upon the judiciary a nonjudicial power. We recognized that Neb. Const. art. II, § 1 (now art. II, § 1(1)), divides the powers of the government into three departments—legislative, executive, and judicial—and dictates that "no person or collection of persons being one of these departments shall exercise any power properly belonging to either of the others except as expressly directed or permitted in this Constitution." We stated that there was no express direction or permission that would make the power in the statute an exception to the general rule.

---

[27] *Id.*

[28] *Id.*

[29] See § 32-624.

[30] *Id.*

[31] *Porter v. Flick, supra* note 23.

[32] See Comp. Stat. 1899, ch. 26, § 137.

In *Porter*, we determined that the power given by the statute similar to what is now § 32-624 was judicial in nature. We reasoned that the Legislature intended to give the judicial officers identified in the statute an authority that the judge might lawfully exercise. We further recognized that courts in other states with similar statutes had exercised a "revisory jurisdiction" over the decisions of ministerial officers charged with preparing the official ballot.[33] For the same reasons set out in *Porter*, we conclude that the order of the district court judge under § 32-624 was a judicial decision.

[12] As a judicial decision, this court has the power to review the judge's order under § 32-624. Under Neb. Const. art. V, § 23, "The several judges of the courts of record shall have such jurisdiction at chambers as may be provided by law." That provision empowers the Legislature to confer power in chambers. While § 32-624 does not use the word "chambers" expressly, it impliedly does by referring to a judge. As to an appeal, Neb. Const. art. I, § 23, mandates "one appeal to the appellate court created pursuant to Article V, section 1, of this Constitution or to the Supreme Court" as a matter of right. In view of this provision, the intent of § 32-624 could not have been to exclude orders made in the special proceeding from appellate review.[34] Further, the Legislature has given this court "appellate and final jurisdiction of all matters of appeal and proceedings in error which may be taken from the judgments or decrees of other courts in all matters of law, fact, or equity."[35]

[13,14] Section 25-1911 authorizes appellate review of a "final order made by the district court." The word "court" as used in § 25-1911 "has always been construed to mean, not only the tribunal over which a judge presides, but the judge

---

[33] *Porter v. Flick, supra* note 23, 60 Neb. at 776, 84 N.W. at 263.

[34] See *State, ex rel. Meissner, v. McHugh, supra* note 17.

[35] Neb. Rev. Stat. § 24-204 (Reissue 2016).

himself [or herself] when exercising, at chambers, judicial power conferred by statute."[36]

Jurisdiction of the appellate courts is further addressed in § 24-1106. Under § 24-1106(1), an appeal from a district court order in a case such as this would be to the Nebraska Court of Appeals. However, § 24-1106(3) specifies that "[c]ases may be removed from the Court of Appeals for decision by the Supreme Court for any one or more of the reasons set forth in subsection (2) of this section or in order to regulate the caseload existing in either the Court of Appeals or the Supreme Court." At least two of the reasons contained in subsection (2) apply here: The case involves a novel legal question and is one of significant public interest.[37]

Having concluded that we may exercise jurisdiction over this appeal, we turn to the substantive issues raised by the parties.

### Discovery

The objectors argue that the district court erred in prohibiting discovery and holding that the proceeding under § 32-624 was limited to the record before the commissioner. Before resolving the issue, we dispose of an argument presented for the first time in briefing to this court.

The objectors recognize that "the parties and the Court during the proceedings below assumed, based on past caselaw and the pre-filing deadline timing of the objection proceedings, that the jurisdictional deadline for relief under § 32-624 was March 16, 2022."[38] Even the objectors' March 3 notice of appeal requested "an expedited briefing and argument schedule in order for relief to be provided before the statutory jurisdictional deadline [of] March 16." (Emphasis omitted.) But with the passing of the March 1 filing deadline and the absence

---

[36] *Porter v. Flick, supra* note 23, 60 Neb. at 775, 84 N.W. at 262.

[37] See § 24-1106(2)(a) and (e).

[38] Brief for appellants at 38.

of any other Democratic candidate for county attorney, they suggest that under Neb. Rev. Stat. § 32-811(1)(b) (Reissue 2016) "the deadline for relief under § 32-624 may actually be sometime in September."[39]

[15-17] There are at least three problems with the objectors' newly asserted position. First, a party cannot complain of error which the party has invited the court to commit.[40] Having goaded the court into making its order on an expedited basis, the objectors cannot now contend that the court erred in doing so. Second, appellate courts do not generally consider arguments and theories raised for the first time on appeal.[41] Third, the objectors did not assign error concerning the court's belief as to the deadline, and an appellate court does not consider errors which are argued but not assigned.[42] Seeing no error plainly evident from the record,[43] we decline the objectors' invitation to find plain error and "remand[] for a threshold determination of the actual period for potential relief and further corresponding proceedings."[44]

The objectors argue that discovery is available in a special statutory proceeding. They direct our attention to Neb. Rev. Stat. § 25-2225 (Reissue 2016):

Where, by general or special statute, a civil action, legal or equitable, is given and the mode of proceeding therein is prescribed, this code shall not affect the proceedings under such statute, until the Legislature shall otherwise provide; but in all such cases, as far as it may be consistent with the statute giving such action, and practicable under this code, the proceedings shall be conducted in

---

[39] *Id.*

[40] *Seid v. Seid*, 310 Neb. 626, 967 N.W.2d 253 (2021).

[41] *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018).

[42] *Moore v. Nebraska Acct. & Disclosure Comm.*, 310 Neb. 302, 965 N.W.2d 564 (2021).

[43] See *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022).

[44] Brief for appellants at 39.

conformity thereto. Where the statute designates by name or otherwise the kind of action, but does not prescribe the mode of proceedings therein, such action shall be commenced and prosecuted in conformity to this code; where the statute gives an action, but does not designate the kind of action, or prescribe the mode of proceeding therein, such action shall be held to be the civil action of this code and proceeded in accordingly.

The objectors emphasize the last sentence of the statute, contending that it provides authorization for discovery.

The premise of the objectors' argument is flawed. Their premise is that § 32-624 does not prescribe the mode of proceedings. But it does. Section 32-624 intended a limited statutory procedure. It provides that the court's order "may be made summarily upon application."[45] And when a statute prescribes the mode of proceeding, § 25-2225 provides that "this code shall not affect the proceedings under such statute."

A summary review proceeding is inconsistent with discovery. The primary purpose of the discovery process is to explore all available and properly discoverable information to narrow the fact issues in controversy so that a trial may be an efficient and economical resolution of a dispute.[46] A proceeding under § 32-624 is not a trial, and the issue is limited to the validity of a candidate filing form. In considering objections, the filing officer is not confined to mere formal matters relating to the certificate of nomination and may consider extrinsic evidence.[47] But "when presented to a judge or court, the proceeding, being in the nature of a summary review, is essentially appellate."[48] And upon appellate review is not the proper place to make a record.[49]

---

[45] § 32-624.

[46] *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020).

[47] *State v. Allen*, 43 Neb. 651, 62 N.W. 35 (1895).

[48] *State, ex rel. Brazda, v. Marsh*, 141 Neb. 817, 822, 5 N.W.2d 206, 210 (1942).

[49] See *State v. Rust*, 247 Neb. 503, 528 N.W.2d 320 (1995).

[18] In overruling the discovery requests, the district court was mindful of the short timeframe it had to make a decision. It noted that after the objectors filed their application, only 34 days remained for "the final word" and that the objectors also wished to reserve some of that time for an appeal. We review the court's ruling for an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[50] We find no abuse of discretion by the court in denying discovery.

### Meaning of "Practiced Law Actively"

We now turn to the merits of the objection to Morfeld's candidacy. The objectors asserted that he did not qualify under the language of § 23-1201.02(1). We disagree.

[19] Before turning to statutory interpretation, we recall the rule of liberal construction regarding statutes relating to election law:

> "[I]t is the duty of the courts, in construing statutes providing for printing the names of candidates of both old and new political organizations upon the ballot," to do so in light of the constitutional principle that "all elections shall be free; and there shall be no hindrance or impediment to the right of the qualified voter to exercise the elective franchise."[51]

In other words, statutes relating to election law must be liberally construed so as to promote, rather than defeat, candidacy for the primary election.[52]

[20,21] Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[53] An

---

[50] *Lombardo v. Sedlacek, supra* note 15.

[51] *Davis v. Gale*, 299 Neb. 377, 381, 908 N.W.2d 618, 623 (2018), quoting *Morrissey v. Wait*, 92 Neb. 271, 138 N.W. 186 (1912); Neb. Const. art. I, § 22.

[52] See *Davis v. Gale, supra* note 51.

[53] *State ex rel. Peterson v. Shively*, 310 Neb. 1, 963 N.W.2d 508 (2021).

appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.[54]

For the reader's convenience, we again quote the statute:

No person shall seek nomination . . . for the office of county attorney . . . , unless he or she has been admitted to the practice of law in this state for at least two years next preceding the date such person would take office and has *practiced law actively in this state during such two-year period* . . . .[55]

The objectors concede, as they must, that Morfeld was "admitted to the practice of law in this state" for the requisite period. They focus instead on the requirement that he had "practiced law actively" in Nebraska for such period. The parties agree that what Morfeld did during the period occurred in this state. They dispute, however, whether he "practiced law actively."

These three words join two concepts: (1) an activity, "practiced law," and (2) a level of activity, "actively." We view the objectors as disputing both. These three words have been in § 23-1201.02 since it was first adopted in 1969.[56]

Regarding the meaning of "practiced law," the objectors suggest that we should look to two rules of this court. One, relating to admission of attorneys, defines "[s]ubstantially engaged in the practice of law."[57] The other, which is perhaps more helpful, defines "to practice law," in the context of the unauthorized practice of law, as the "application of legal principles and judgment with regard to the circumstances or objectives of another entity or person which require the knowledge,

---

[54] *Id.*

[55] § 23-1201.02(1) (emphasis supplied).

[56] See 1969 Neb. Laws, ch. 142, § 1, p. 664.

[57] Neb. Ct. R. § 3-101(P) (rev. 2020).

judgment, and skill of a person trained as a lawyer."[58] This definition also includes a nonexclusive list of activities.[59]

[22] But neither of these rules existed in this form in 1969, when the Legislature adopted the three key words of § 23-1201.02(1). Thus, we are reluctant to characterize those rules as demonstrative of the plain and ordinary meaning in 1969 of the words "practiced law actively." The U.S. Supreme Court recently stated, "'[I]t's a "fundamental canon of statutory construction" that words generally should be "interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute."'"[60] Last year, we assumed without deciding that this proposition applied to the interpretation of a statute enacted by our Legislature.[61] We now decide that it does. Thus, it is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.

We turn to contemporaneous sources for definitions, first for "practice law." One general dictionary defined "practice" as "[t]o work at, especially as a profession: *practice law*."[62] Another general dictionary defined "practice" as "to do or perform frequently, customarily, or habitually" or "to put into practice; to use one's knowledge of; to work at, especially as a profession."[63] A legal dictionary defined "practicing law" by reference to "practice of law," which it defined as follows:

> Rendering the services peculiar to the profession. The work of an attorney at law in the preparation of pleadings and other papers incident to actions and special

---

[58] Neb. Ct. R. § 3-1001.

[59] See § 3-1001(A) to (E).

[60] *New Prime Inc. v. Oliveira*, ___ U.S. ___, 139 S. Ct. 532, 539, 202 L. Ed. 2d 536 (2019).

[61] See *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021).

[62] The American Heritage Dictionary of the English Language 1028 (1969) (emphasis in original).

[63] Webster's New Twentieth Century Dictionary of the English Language, Unabridged 1413 (2d ed. 1956).

proceedings, the management of such actions and pro-
ceedings on behalf of clients before judges and courts, the
preparation of legal instruments of all kinds, and, in gen-
eral, advising clients and taking action for them in matters
connected with law. . . . Inclusive of counseling as well as
trial work. . . . The giving of such advice or the rendition
of such service as requires the use of any degree of legal
knowledge or skill.[64]

Another legal dictionary defined "practice of law" to mean:

Not limited to appearing in court, or advising and assist-
ing in the conduct of litigation, but embracing the prepa-
ration of pleadings, and other papers incident to actions
and special proceedings, conveyancing, the preparation of
legal instruments of all kinds, and the giving of all legal
advice to clients. . . . It embraces all advice to clients
and all actions taken for them in matters connected with
the law.[65]

Next, we look to definitions regarding "actively." A gen-
eral dictionary defined "active" as "[e]ngaged in activity;
contributing; participating . . ." or "[c]haracterized by ener-
getic action or activity; busy."[66] Another general dictionary
described "actively" as "in an active manner; by action; nim-
bly; briskly."[67] A legal dictionary defined "active" as "[t]hat is
in action; that demands action; actually subsisting; the opposite
of passive."[68]

The objectors observe that we defined the term "actively" in
*Hall v. Progress Pig, Inc.*[69] and urge application of that defini-
tion here. The issue in *Hall* was whether a shareholder was

---

[64] Ballentine's Law Dictionary 972 (3d ed. 1969).

[65] Black's Law Dictionary 1335 (rev. 4th ed. 1968).

[66] The American Heritage Dictionary of the English Language 13 (1969).

[67] Webster's New Twentieth Century Dictionary of the English Language,
Unabridged 20 (2d ed. 1956).

[68] Black's Law Dictionary 52 (rev. 4th ed. 1968).

[69] *Hall v. Progress Pig, Inc.*, 259 Neb. 407, 610 N.W.2d 420 (2000).

"actively engaged in the day-to-day labor and management of [a] farm."[70] Breaking down that clause into its component parts, we stated that "the terms 'actively engaged,' 'day to day,' 'labor,' and 'management' should be given their most natural and obvious meaning."[71] Consulting a dictionary, we defined "actively" to mean "'constantly engaged.'"[72] We reasoned that "to be actively engaged in the day-to-day labor and management of the farm or ranch requires that such person be involved on a daily or routine basis in all aspects of the farm or ranch activities, be it labor or management."[73] We conclude, as did the district court, that "actively" refers to the frequency or extent of involvement.

[23] Returning to the phrase "practiced law actively," we perceive no ambiguity in the use of these words. Putting the words together and giving them their plain and ordinary meanings, as used in § 23-1201.02(1), "practiced law actively" means engaged in giving advice or rendering such service as requires the use of any degree of legal knowledge or skill and doing so on a daily or routine basis.

One can be engaged in the practice of law in a multitude of different ways. Considering Morfeld's employment with Civic Nebraska in light of the plain and ordinary meaning of "practiced law actively," we conclude it falls within the definition. His day-to-day activities, and not his title as "Executive Director," drive our conclusion.

In a sworn affidavit, Morfeld set out his employment activities. According to his affidavit, he provides legal advice, direction, and supervision to Civic Nebraska, on a routine basis, in a variety of areas. He stated that on a routine basis, he provides Civic Nebraska the type of legal advice that in-house

---

[70] *Id.* at 415, 610 N.W.2d at 428.

[71] *Id.* at 414, 610 N.W.2d at 427.

[72] *Id.* at 414, 610 N.W.2d at 428.

[73] *Id.* at 415, 610 N.W.2d at 428.

counsel provides in other companies, including ongoing legal advice to Civic Nebraska regarding contracts, leases, nonprofit compliance, and matters of employment law. In connection with Morfeld's employment, he routinely uses his legal knowledge and skill. And he is not giving legal advice to himself— he is providing counsel to an organization and its employees. In doing so, he practices law actively. To the extent the objectors' argument could be understood to mean that an attorney employed as in-house counsel does not practice law because the attorney does not provide legal services to "clients," we soundly reject it.

[24] Because Morfeld's providing legal advice on a routine basis regarding various matters to Civic Nebraska satisfies the "practiced law actively" requirement, we need not determine whether his activities with the ballot question committee or his service as a senator in the Legislature also constitute "practic[ing] law actively." An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[74]

[25] The objectors argue that the district court erred by interpreting "practiced law" to be determined by "the nature of the act" rather than "the forum or object of the act." In making that determination, the district court relied on a case involving the unauthorized practice of law[75] and noted that we reaffirmed the broad definition of "practice of law" in a case decided 8 years prior to the enactment of § 23-1201.02.[76] As foreshadowed above based on the plain and ordinary meaning of practice of law, we agree with the district court that the nature of the activity is key. By advancing the notion that "the forum or object of the act" is controlling, it appears the objectors wish to have us read words into the statute that are not there. Neither is it

---

[74] *Schmid v. Simmons, ante* p. 48, ___ N.W.2d ___ (2022).

[75] *State, ex rel. Johnson, v. Childe*, 139 Neb. 91, 295 N.W. 381 (1941).

[76] See *State ex rel. Nebraska State Bar Assn. v. Butterfield*, 172 Neb. 645, 111 N.W.2d 543 (1961).

within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.[77] Section 23-1201.02 contains no requirement that the attorney have courtroom litigation experience or that the practice be prosecutorial in nature. An individual who meets the qualification requirements of § 23-1201.02 is eligible to be a candidate for election as county attorney. The appropriate audience for a political party's contention that a candidate's experience is lacking and undeserving of a vote is the electorate.

## CONCLUSION

Having established our jurisdiction over an appeal from an order made pursuant to § 32-624, we find no abuse of discretion by the district court in denying discovery. Based on the plain and ordinary meaning of "practiced law" and "actively," we conclude that Morfeld's routine activities with Civic Nebraska fall within the meaning of "practiced law actively" and that he has engaged in such activities for the relevant 2-year period. Accordingly, he meets the qualifications of § 23-1201.02 to seek nomination for the office of county attorney.

While our attention on § 23-1201.02 is focused on qualification to be placed on the ballot for the office of county attorney, ultimately the electors of Lancaster County are charged with determining whether a candidate's experience is meaningful and worthy of support.

AFFIRMED.

HEAVICAN, C.J., and STACY and PAPIK, JJ., not participating.

---

[77] *Seivert v. Alli*, 309 Neb. 246, 959 N.W.2d 777 (2021).